IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

GREGORY P. JELLENEK, O.D.
& ASSOCIATES, P.C.,

    Plaintiff,

v.                                                               Civil Action No. 3:14cv230-JAG

ANDREA R. JOSEPH,

    Defendant.

## MEMORANDUM OPINION

This matter comes before the court on the plaintiff's motion to dismiss the defendant's counterclaims under Federal Rule of Civil Procedure 12(b)(6). (Dk. No. 9.)

The plaintiff filed suit against the defendant in March 2014, alleging a host of claims arising from the messy dissolution of the parties' previous business relationship. (Dk. No. 1.) The defendant promptly counterclaimed, alleging (1) tortious interference with economic relationship and (2) breach of contract. Because the plaintiff alleges factually sufficient, legally complete counterclaims, the Court will DENY the plaintiff's motion to dismiss.

## I. MATERIAL FACTS

The plaintiff's optometry practice provides services at locations throughout Virginia and (previously) Maryland. At the time the saga in question began, the plaintiff, Jellenek, operated a practice at Andrews Air Force Base (AAFB) in Maryland under a lease with National Vision, Inc., a nation-wide optical retailer. Jellenek hired the defendant, Joseph, to work as an optometrist at his AAFB practice in February 2012. Joseph alleges that during those negotiations, Jellenek agreed to, among other things: (1) provide her with part-time relief (specifically, another optometrist to cover her lunch break and Saturdays) and (2) ten days of paid personal time off per year. Joseph accepted the position on those agreed-upon terms.

In June 2012, Jellenek presented Joseph with an Employment Agreement, which provided for a one-year term of employment dating from October 2012 to October 2013. There were several notable variations between that written contract and the oral agreement Joseph had originally agreed to (and was currently working under). First, the contract limited Joseph to a sum of four days of paid time off during that upcoming 12-month span, a much-diminished allowance that Jellenek enforced when challenged. Second, the contract did not contain any mention of Joseph's previously-promised entitlement to part-time relief.

During Joseph's employment with Jellenek, the AAFB practice was—to put it charitably—poorly run, resulting in Joseph's disenchantment with her newfound employer, general unhappiness among the practice's other employees, and rising concern on the part of Jellenek's leaseholder, National Vision. Joseph submitted her letter of resignation on June 12, 2013, officially resigning effective July 3, 2013. Jellenek's business relationship with National Vision continued to deteriorate, and on October 9, 2013, National Vision terminated its lease with Jellenek. By the end of November 2013, Jelleneck had abandoned the AAFB location.

The AAFB location did not stay vacant long. Joseph entered into a lease with National Vision on December 1, 2013, and began *her* practice in that same clinic. On December 19, Jellenek sent Joseph a "cease and desist" letter, accusing her of conspiring with National Vision to terminate Jellenek's previous lease.[1] When Joseph refused to close her AAFB practice—or to terminate her agreement with National Vision—Jellenek made good, filing suit in March 2014.

## II. STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss gauges the sufficiency of a complaint without resolving any factual discrepancies, testing the merits of the claim or judging the applicability of

---

[1] Jellenek sent a copy of that letter to National Vision, Joseph's new leaseholder.

any defenses raised by the non-moving party. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). A 12(b)(6) motion considers whether the non-moving party's description of the facts, if assumed to be completely true, would entitle her to the requested relief. *Unus v. Kane*, 565 F.3d 103, 115 (4th Cir. 2009). To survive a 12(b)(6) motion to dismiss, a complaint must contain facts that, when accepted as true, "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

### III. DISCUSSION

Joseph's counterclaims survive Jellenek's motion to dismiss. As explained in greater detail below: (1) Joseph's counterclaim for tortious interference, as amended, properly alleges facts sufficient to support each of that tort's requisite elements, and (2) a deferential reading of Joseph's asserted facts supports her counterclaim for breach of contract.

#### A. Tortious Interference with Economic Relationship

To establish tortious interference with economic relationship, Joseph must plead plausible factual support to establish her claim that Jellenek undertook: "(1) intentional and willful acts; (2) calculated to cause damage to [Joseph] in [her] lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *Natural Design, Inc. v. Rouse Co.*, 302 Md. 47, 71 (1984).[2]

---

[2] Federal courts apply the choice of law rules of the state in which the federal court is located. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Virginia's choice of law rules for tort claims applies the law of the state in which the last necessary event to incur liability took place. *See Quillen v. International Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir. 1986); *Insteel*

3

Jellenek's motion to dismiss argues that Joseph's counterclaim is deficient on elements (1) and (3); specifically, that Joseph fails to allege damages or establish Jellenek's tortious intent.

Joseph alleges that Jellenek's actions caused her "emotional distress and actual harm to reputation," a recoverable category of damages for this particular tort claim. *Rite Aid Corp. v. Lake Shore Investors*, 298 Md. 611, 621-22 (1984); *see also Alexander & Alexander Inc. v. Dixon Evander & Associates, Inc.*, 336 Md. 635, 645-55 (1994). In support, Joseph lists a catalogue of grievances that range from emotional to financial injury. Those factual allegations adequately support Joseph's claim that Jellenek's actions caused her to suffer injury.

In order to establish Jellenek's tortious interference, Joseph must also plead facts demonstrating that Jellenek's interference exhibited a tortious intent, and took the form of a wrongful or improper manner. *See Macklin v. Robert Logan Assocs.*, 334 Md. 287, 301 (1994). This requirement can be satisfied by, "the institution or threat of groundless civil suits or criminal prosecution in bad faith." *Id.*; *see also 180s, Inc. v. Gordini, U.S.A., Inc.*, 602 F. Supp 2d 635, 639-640 (D. Md. 2009).

Joseph plausibly alleges that Jellenek's lack of business acumen destroyed its relationship with National Vision without any help from Joseph, well *before* Joseph accepted a contract from National Vision to operate its Andrews practice. Taking Joseph's factual assertions at face value, Jellenek's lawsuit—alleging that Joseph's action (taken *after* the closure of the AAFB practice) was to blame for the failure of Jellenek's chronically mismanaged practice—constitutes just such a "groundless civil suit." *Id.* Joseph's counterclaim for tortious inference survives.

---

*Indus. V. Costanza Contr. Co.*, 276 F. Supp. 2d 479, 486 (E.D. Va 2003). Joseph alleges that Jellenek's tortious actions caused her to suffer injury at her AAFB practice—in Maryland.

## B. Breach of Contract

A cognizable breach of contract claim requires: (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach. *Filak v. George*, 267 Va. 612, 619 (2004).[3]

The parol evidence rule bars the introduction of evidence of prior or contemporaneous agreements between the parties where those agreements would either be inconsistent with or contradict the written contract's terms. *See Durham v. Nat'l. Pool Equip. Co. of Va.*, 255 Va. 147, 155 (1998). However, "where it is apparent that the written contract is not a complete integration of all prior and contemporaneous negotiations which have been agreed upon by the parties," evidence of other, unincorporated agreements is admissible if those agreements are "inconsistent with or contrary to the writing." *Id.* Nor does the parol evidence rule bar the introduction of evidence that would *clarify* an ambiguous term in the written contract.[4]

Here, the parties' contract does not contain a merger clause, and the two "prior and contemporaneous" agreements[5] that Jellenek takes exception to both find refuge in exceptions to the parol evidence rule's exclusionary effect.

### *1. Part-time Help*

Jellenek's first citation to the parol evidence rule concerns Joseph's allegation that Jellenek refused to honor its agreement to provide part-time help for Joseph at the Andrews practice during Joseph's lunch breaks and on Saturdays. The parties' written contract is utterly

---

[3] The parties' contract contains a Virginia choice-of-law clause, and so the Court applies Virginia law. *See Paul Business Systems, Inc. v. Canon U.S.A., Inc.*, 240 Va. 337, 341 (1990).
[4] *Langenderfer v. Midrex Corp.*, 660 F.2d 523, 525 (4th Cir.) ("Parol evidence, of course, is allowable to explain ambiguous contract provisions.").
[5] These two agreements make up *one* of Joseph's two asserted bases for her breach of contract counterclaim; Jellenek admits that the other basis states a claim for breach of contract.

silent on the matter, neither acknowledging nor denying any such employment condition.[6] The Court's acceptance of the validity of Joseph's factual assertion—that the parties explicitly agreed to this arrangement—thus does not contradict any other term in the contract, nor introduce any inconsistency into the parties' contractual relationship.[7]

### 2. *Vacation Days*

Joseph's claim that Jellenek breached her employment contract by stiffing her on the number of paid vacation days permitted presents an equally compelling case for the introduction of parol evidence. The Employment Agreement (which addresses an upcoming, discrete 12-month period of employment) states that Joseph is entitled to "a total of four (4) *remaining* days of PTO."[8] Because this wording is ambiguous on its face, parol evidence is admissible to flesh out the parties' intent.[9] *See Langenderfer*, 660 F.2d at 525. Joseph's claim that the parties agreed to a total of 10 vacation days per year—and that Jellenek subsequently breached that agreement—may go forward.

### IV. **CONCLUSION**

For the reasons set forth above, the Court DENIES the plaintiff's motion to dismiss the defendant's counterclaims. The Court will enter an appropriate order.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

Date: June 26, 2014
Richmond, VA

/s/ 
John A. Gibney, Jr.
United States District Judge

---

[6] As a practical matter, it seems highly unlikely that Jellenek seriously intends to argue that its employment contracts implicitly (if not explicitly) forbid employees to take lunch breaks.

[7] Where a written agreement is not fully integrated, or does not represent the entirety of the parties' agreement, "parol evidence is admissible, not to contradict or vary its terms but to show additional independent facts contemporaneously agreed upon, in order to establish the entire contract between the parties." *High Knob, Inc. v. Allen*, 205 Va. 503, 506 (1964).

[8] Employment Agreement, at 2 (emphasis added).

[9] Of course, the very wording acknowledges that referral to another, previous agreement is both required and necessary ("remaining" from what?).